IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br><br>v.<br><br>CHRISTOPHER EWELL,<br>        Defendant. | )<br>)<br>)<br>) Criminal Action No. 07-169-SLR<br>)<br>)<br>) |

### GOVERNMENT'S POST-HEARING RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**NOW COMES** the United States of America, by and through its undersigned attorneys, and hereby responds to Defendant's Motion to Suppress Physical Evidence and Statements, and respectfully requests that this Court deny the motion for the reasons that follow.

### INTRODUCTION

On December 13, 2007, a federal grand jury for the District of Delaware indicted the defendant, Christopher Ewell, on one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). The charges stemmed from the defendant's arrest on November 26, 2007, during which a loaded firearm, along with four small ziplock bags of marijuana, were found in the defendant's jacket pocket following a traffic stop. On January 31, 2008, the defendant filed a Pre-trial Motion to Suppress Physical Evidence and Statements, and on March 18, 2008, and May 21, 2008, this Court held evidentiary hearings on this motion.

### PROPOSED FINDINGS OF FACT

    *A.*    *Traffic Stop, Search, and Arrest*

On November 26, 2007, Wilmington Police Officers Brian Conkey and Robert Reaves observed the defendant driving a white Buick, and saw him disregard three stop signs — at the

corner of 25th and Jefferson, 24th and Jefferson, and 24th and Madison Streets in Wilmington, Delaware. Suppression Hearing Transcript, March 18, 2008, at 4-7 [hereinafter "3/18/08 Tr."]; Gov't Ex. 1. As a result of these violations, the officers pulled over the vehicle. *Id.* at 6-7. When he came to a stop, the defendant immediately took off his jacket, which Officer Conkey found to be unusual behavior. *Id.* at 8.

The officers approached the car, and Officer Conkey asked the defendant for his license, registration, and proof of insurance. *Id.* at 8. Officer Conkey observed that the defendant appeared nervous. *Id.* at 9-10. When the defendant rolled down the window, Officer Conkey noticed the distinct and strong smell of fresh marijuana coming from the car. *Id.* at 10. Officer Conkey has received specific training to identify the smell of fresh marijuana, and has encountered fresh marijuana on numerous occasions during his three years as a police officer. *Id.* at 10-11. Officer Conkey found that the smell of marijuana was particularly noticeable because the heat was on in the vehicle. *Id.* at 11-12.

Officer Conkey asked the defendant why he smelled marijuana. When the defendant gave no reply, Officer Conkey ordered the defendant out of the car. *Id.* at 12. As the defendant got out of the car, he moved his jacket to the passenger seat, and Officer Conkey saw that the jacket was heavy on one side, as if there was "some weight" to it. *Id.* at 12. The defendant was then taken to the back of the vehicle where he was handcuffed and patted down by Officer Reaves. *Id.* at 12, 35.

Officer Conkey retrieved the defendant's jacket from the car, and again noticed that it was weighted to one side. Officer Conkey opened the jacket pocket and saw four small ziplock bags of marijuana contained in a folded sandwich bag and a .25 caliber handgun. *Id.* at 13-14; Gov't Ex. 2.

The defendant was then placed under arrest. *Id.* at 16. About five minutes elapsed between the initial stop and the arrest of the defendant. *Id.* at 16.

After the defendant was placed under arrest, Officer Reaves read him his *Miranda* rights, and the defendant stated that he understood them. *Id.* at 35. Officer Reaves asked the defendant what was in the car, and the defendant replied, "it's for protection." *Id.* at 35. Officer Reaves then asked the defendant why he was carrying the gun, and the defendant explained, in essence, that he was having problems with people in the neighborhood and was carrying the gun for protection. *Id.*

Officer Conkey next drove the defendant to police headquarters. On the way, Officer Conkey confirmed that the defendant still understood his *Miranda* rights and asked him why he would drive around with marijuana and a gun and blow stop signs. *Id.* at 16. The defendant stated he did not know, and that he wanted to end the conversation. *Id.* at 17. At that point, the interview terminated. *Id.* at 17.

### B.    *Expert Testimony on the Smell of Marijuana*

On May 21, 2008, this Court held a supplemental evidentiary hearing to receive expert testimony on whether the four baggies of marijuana had a detectable odor.

1.    Officer Conkey

The four ziplock bags of marijuana were admitted into evidence as Government's Exhibit 1A. Officer Conkey testified that the four ziplock bags appeared to be packaged in a similar manner as they had been on November 26, 2007 — the day they were seized from the defendant. Suppression Hearing Transcript, May 21, 2008, at 5 [hereinafter "5/21/08 Tr."]. He further described the odor coming from the bags as the smell of unlit marijuana, and stated that this was the

same odor he detected during the November 26, 2007 car stop. *Id.* at 6. He noted, however, that the smell from the bags was stronger on November 26, 2007, than it was at the hearing. *Id.* at 5, 8.

    2.    Dr. Stephen Duerr

The defense called Dr. Stephen Duerr, who testified as an expert witness in the field of forensic chemistry. Dr. Duerr stated that his testimony was based on his own ability to smell marijuana when conducting forensic analysis on evidence samples. *Id.* at 20. He specified that in each case where he has performed forensic analysis, he has been given a sample of the evidence and has had "the opportunity to . . . detect or not detect the odor of all the substances that I've examined." *Id.* at 20. He acknowledged, however, that he has received no training on how to identify marijuana by smell. *Id.* at 30. Furthermore, Dr. Duerr stated that his testimony was not based on any studies or other empirical evidence regarding people's ability to smell marijuana. *Id.* at 21. Dr. Duerr also said that his experience in handling marijuana is limited to laboratory and office environments and he has no experience, nor has he performed any empirical studies, with regard to the smell of marijuana in a closed compartment such as a vehicle. *Id.* at 32.

Dr. Duerr stated his opinion that the four bags of marijuana would not have given off a noticeable odor from a car if they were packaged inside a sandwich bag, which in turn was placed inside a jacket pocket. *Id.* at 22. Dr. Duerr also testified that, in theory, the heat being on in the car should not have affected the strength of the marijuana odor. *Id.* at 25. He stated that a carefully closed zip-lock bag would be a barrier to odor, but that if the zip-lock were not "pretty well sealed" then it would "open up under normal handling." *Id.* at 26.

On cross-examination, Dr. Duerr was unable to identify the substance in the four ziplock bags as marijuana by smell or appearance. *Id.* at 28. In fact, he was unable to detect any smell emanating

from four ziplock bags upon examination at the hearing. *Id.* at 29. Dr. Duerr further stated his opinion that the length of time that the marijuana was in the car, the fact that bags might have been opened in the car, and the fact that there may have been residue on the outside of the bags should not affect the smell of marijuana. *Id.* at 33.

    3.    Special Agent Eric Miller

The Government called Special Agent Eric Miller of the Drug Enforcement Administration (DEA) as an expert witness in the identification of the smell and appearance of marijuana. Special Agent Miller testified that he has received specific training with regard to the smell of fresh marijuana and the identification of marijuana. *Id.* at 37-38. He served as the drug custodian for Delaware's DEA office for 12 years, which includes responsibility for marijuana storage for the entire Philadelphia division of DEA, and served as the marijuana eradication coordinator for the State of Delaware. *Id.* at 37. In addition, Special Agent Miller has been involved in at least 250 seizures involving marijuana evidence. These seizures include his personal involvement in at least 25 vehicle stops where marijuana was discovered in quantities the same or less than the four ziplock bags seized from the defendant. *Id.* at 41.

Special Agent Miller stated that dried marijuana has a distinctive smell, *id.* at 43, and he has been able to detect the odor of small quantities of marijuana during car stops, *id.* at 44. He further explained that cars, in his experience, act like secondary containers that capture the marijuana smell, and that when the heat is on in the car, the smell is intensified. *Id.* at 46-47. Special Agent Miller cited a particular example of a recent car stop in which he found marijuana in a woman's purse. The marijuana was of similar quantity and packaged in a similar manner as the marijuana seized from

the defendant. Special Agent Miller recalled that he was able to detect the "clear distinct smell of marijuana emanating from her purse" from a distance of three to four feet away. *Id.* at 45.

Similarly, Special Agent Miller has been able to detect the smell of marijuana emanating from drug evidence even when it is contained in heat-sealed evidence bags, but particularly if the bag is at all open or if residue is on the outside of the bag. *Id.* at 46-48. He gave a recent example where a U.S. Postal Employee detected the smell of marijuana even though Special Agent Miller had placed the marijuana in a heat-sealed evidence bag, which was then placed into a box, wrapped with paper and sealed with tape. *Id.* at 48-49.

Special Agent Miller reviewed the marijuana seized from the defendant, Government's Exhibit 1A, and testified that he was able to detect an odor coming from it. *Id.* at 44.

## ARGUMENT

The defendant contends that the police lacked reasonable suspicion to conduct the traffic stop of his vehicle, and further challenges the search of his jacket that led to the discovery of the firearm and marijuana. The defendant also asks this Court to suppress his post-arrest statements. In light of the evidence presented at the suppression hearing, the defendant's motion should be denied.

A.  ***There Was Reasonable Suspicion to Conduct the Traffic Stop, and the Smell of Marijuana Gave Probable Cause to Search the Defendant's Jacket.***

To conduct a traffic stop, police need only reasonable suspicion of a traffic violation. *See United States v. Delfin-Colina*, 464 F.3d 392, 397-98 (3d Cir. 2006) (holding that "the *Terry* reasonable suspicion standard applies to routine traffic stops" such that "a traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop"). Officer

Conkey testified that he observed the defendant disregard three stop signs and pulled him over on that basis. This observation provided reasonable suspicion, if not probable cause, for a traffic stop.

Once the traffic stop occurred, Officer Conkey testified that the smell of marijuana was noticeable immediately when the defendant rolled down the window. 3/18/08 Tr. at 10-11. The Third Circuit has recognized that, "[i]t is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006); *see also United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("[W]hen marijuana is believed to be present in an automobile based on the odor emanating therefrom, we have found probable cause to search the automobile."); *United States v. Brown*, 261 Fed. Appx. 371, 373 (3d Cir. 2008) (not precedential opinion) ("Detective Maxwell smelled marijuana coming from the car. This alone was enough to establish probable cause"). Officer Conkey's observation of the smell of marijuana coming from the car thus gave rise to probable cause to search the vehicle under *Ramos*.

It is well-established, moreover, that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). In *California v. Acevedo*, 500 U.S. 565, 580 (1991), the Supreme Court specified that, if there is probable cause to search an automobile, police may also search any "containers within it where they have probable cause to believe contraband or evidence is contained."

In addition to smelling the marijuana, Officer Conkey found it unusual that the defendant quickly took off his jacket when the traffic stop was initiated, and noticed that the jacket was weighted to one side. Officer Conkey also observed that the defendant appeared nervous during the

initial stop. Further, the pocket that he searched was the one that was closest to the driver's side window. These observations only bolstered his search of the jacket pocket in which the marijuana and the gun were found. Nonetheless, under *Ross* and *Acevedo*, it was not necessary for Officer Conkey to have particularized suspicion as to the jacket itself because the smell of marijuana coming from the car gave probable cause to search any part of the vehicle, including containers, where the marijuana could be found. *See United States v. Turner*, 119 F.3d 18, 23 (D.C. Cir. 1997)(where "suspicion was not directed at a specific container," but as to the vehicle as a whole, the police had probable cause to search "every part of the vehicle and its contents that may conceal the object of the search."). The smell of marijuana coming from the car thus justified Officer Conkey's search the jacket pocket which could have, and did in fact, contain the marijuana as well as the firearm.

The defense attempted to cast doubt on Officer Conkey's ability to detect the smell of marijuana by presenting the testimony of Dr. Duerr. While Dr. Duerr testified to his opinion that small quantities of marijuana do not smell, this testimony was based solely on his own experience in smelling samples sent to him for testing, and was not based on any empirical studies regarding other people's ability to perceive the odor of marijuana. Moreover, Dr. Duerr testified that he could not detect a smell emanating from the marijuana in Government Exhibit 1A at the hearing on May 21, 2008; however, both Officer Conkey and Special Agent Miller testified that the marijuana smelled on that day. In addition, Dr. Duerr has no direct experience nor has he reviewed any studies regarding the smell of marijuana in vehicles or other enclosed spaces. Dr. Duerr has received no training in the identification of marijuana by appearance or smell, and was not even able to identify the substance in Government's Exhibit 1A as marijuana.

By contrast, Special Agent Miller testified based on his own 18-year experience as a DEA agent, and his personal involvement in over 250 seizures of marijuana from vehicles. Special Agent Miller stated that he has been able to smell marijuana during car stops when the marijuana was in similar packaging and quantity to that discovered in the defendant's jacket. In addition, Special Agent Miller testified, in accordance with Officer Conkey, that the fact that the heat was on in the car, combined with any residue, handling, or opening of the bags of marijuana, could all contribute to the intensity of the smell.

Dr. Duerr's opinion is therefore of minimal evidentiary weight, given his limited training and experience regarding the smell of marijuana, and considering that his opinion based only on his own subjective ability to smell marijuana during the course of his laboratory work. Special Agent Miller's direct training and experience, moreover, directly refutes Dr. Duerr's opinion that small quantities of marijuana do not emit a detectable smell. Therefore, Dr. Duerr's opinion does not impeach Officer Conkey's testimony that he was able to smell marijuana emanating from the defendant's vehicle during the car stop on November 26, 2007.

In sum, there was reasonable suspicion to make the initial stop of the vehicle. Once Officer Conkey detected the smell of marijuana coming from the car, he had probable cause to search the jacket pocket. As a result, the marijuana and firearm should not be suppressed.

**B.**     ***The Defendant's Post-Miranda Statements Are Admissible.***

The defendant also argues that this Court should suppress his statements while he was in custody because he was not informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Officer Reaves, however, promptly informed the defendant of his *Miranda* rights, and the

defendant responded that he understood his rights. The defendant then voluntarily agreed to make a statement to Officer Reaves. His statement to Officer Reaves therefore is admissible.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court deny the defendant's Pre-trial Motion to Suppress Evidence and Statements.

                                        Respectfully submitted,
                                        COLM F. CONNOLLY
                                        UNITED STATES ATTORNEY

                                    BY: _____
                                        Ilana H. Eisenstein
                                        Assistant United States Attorney

Dated: June 11, 2008