IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : : : | |
| v. | : : | Criminal Action No.  07-169-SLR |
| CHRISTOPHER EWELL, | : : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION
TO SUPPRESS EVIDENCE AND STATEMENTS**

Defendant, Christopher Ewell, by and through his undersigned counsel, Eleni Kousoulis, Assistant Federal Public Defender, respectfully submits this Memorandum of Law in Support of his Pre-trial Motion to Suppress Physical Evidence and Statements.  For the reasons set forth below, Mr. Ewell seeks to exclude the Government's admission, at trial, of any and all evidence illegally seized by law enforcement officials on November 26, 2007, including any statements made during or subsequent to the illegal search.

**I. INTRODUCTION**

On December 13, 2007, the Grand Jury for the District of Delaware returned a one-count Indictment against Mr. Ewell, charging him with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).  On January 31, 2008, Mr. Ewell filed a Pre-trial Motion to Suppress Physical Evidence and Statements, arguing that law enforcement officials lacked probable cause or reasonable suspicion to justify the warrantless search of Mr. Ewell's vehicle and jacket.

On March 18, 2008, and May 21, 2008, this Court held evidentiary hearings to determine Mr. Ewell's motion.  The Government filed its Post-Hearing Response on June 11, 2008, arguing that that

there was reasonable suspicion to make the initial stop of Mr. Ewell's vehicle, and law enforcement officials had probable cause to search Mr. Ewell's jacket because they smelled marijuana. Mr. Ewell now submits his post-hearing response.

## II. PROPOSED FINDINGS OF FACT

At the evidentiary hearings, the Government presented the testimony of Officers Brian Conkey and Robert E. Reeves, and Special Agent Eric George Miller. Mr. Ewell presented the testimony of Dr. Stephen Deurr. The relevant hearing testimony is summarized as follows.

### A. Officer Brian Conkey's Testimony

At the March 18, 2008 hearing, Officer Conkey testified that on November 26, 2007, he and his partner, Officer Robert Reeves, observed a white Buick with Delaware T tags disregard three stop signs. See March 18, 2008 Suppression Hearing Transcript at 3-7, 18 (hereinafter "3/18/08 Tr."). Officer Conkey opined that the driver was going faster than the speed limit, and he testified that the officers conducted a traffic stop of the vehicle. Id. at 8, 18-19. Officer Conkey also testified that Officer Reeves' report did not state that Mr. Ewell was speeding. Id. at 18.

Officer Conkey testified that he observed the driver quickly take off his coat, and he approached the driver side of the car, while Officer Reeves approached the passenger side. Id. at 8, 19. Officer Conkey testified that the driver "seemed very nervous," and "[h]e was shaking" and would not make eye contact. Id. at 8, 10, 25.

Officer Conkey identified the driver as Mr. Ewell, and stated that he asked him for his license, registration and insurance. Id. at 8-9. Officer Conkey testified that he informed Mr. Ewell of the reason for the stop, and Mr. Ewell responded that he was late for work and could not afford to get another ticket. Id. at 9, 20, 24.

2

Officer Conkey also testified that as Mr. Ewell rolled down his window, he smelled the "strong smell" of "fresh" marijuana. Id. at 10-11, 20. Officer Conkey stated that he has received training regarding the smell of marijuana, and testified that the smell was "strong," because "from . . . the winter months and the heat being on, once he let down his window, the strong odor of marijuana came because the heat was coming outside of the window, which made it noticeable." Id. at 10-12.

Officer Conkey testified that he asked Mr. Ewell about the smell, and he responded that there was nothing in the vehicle. Id. at 12. Officer Conkey asked Mr. Ewell to get out of the vehicle, and Mr. Ewell placed his jacket on the passenger seat. Id. at 12, 26-27. Officer Conkey testified that the jacket "seemed like it was heavy on [one] side." Id. at 12, 27.

Mr. Ewell was placed in the back of the officers' vehicle, and Officer Conkey retrieved the jacket, felt the weight and "noticed that the jacket opened up." Id. at 13, 27-28. Officer Conkey testified that he could see an object, opened the pocket and saw a silver and black handgun and four heat-sealed bags of marijuana packaged in small zip-lock bags and a sandwich bag. Id. at 13-14, 26,28-30, 32. Officer Conkey further testified that the marijuana was found in Mr. Ewell's left front pocket, which was "right below the window of his vehicle." Id. at 32.

Officer Conkey testified that Mr. Ewell was placed under arrest, and the officers drove him to police headquarters. Id. at 16. Officer Conkey testified that Officer Reaves had previously read Mr. Ewell's Miranda rights, and he asked Mr. Ewell if he still understood those rights. Mr. Ewell allegedly responded, "yes." Id. Officer Conkey testified that he asked Mr. Ewell "why would he drive around with marijuana and a gun in a vehicle and blow stop signs," and Mr. Ewell allegedly responded that he "didn't know." Id. at 16-17.

3

During cross-examination, Officer Conkey reviewed Officer Reeves' report, and acknowledged that the report stated that Mr. Ewell moved his jacket to the passenger seat prior to retrieving his license and registration. Id. at 24. Officer Conkey, however, reaffirmed his testimony that Mr. Ewell had removed his jacket just before exiting the vehicle, but would not state if Officer Reeves' report was inaccurate. Id.

At the May 21, 2008 hearing, Officer Conkey testified regarding the drug evidence. Officer Conkey examined the drug evidence and testified that the four baggies were contained in a sandwich bag on the day of Mr. Ewell's arrest. See May 21, 2008 Suppression Hearing Transcript at 4-6, 13 (hereinafter "5/21/08 Tr."). Officer Conkey testified that he could smell "unlit marijuana" emanating from the drug evidence, and that it was "the same odor" that he previously smelled. Id. at 6,8.

Officer Conkey also opined that the marijuana was packaged for sale. Id. at 7. During his testimony, however, Officer Conkey stated that the marijuana was not contained in heat-sealed bags, and could not recall his prior testimony that the marijuana was contained in heat-sealed bags. Id. at 7-8.

### B. Officer Robert Reeves' Testimony

Officer Reeves testified that he conducted a patdown search of Mr. Ewell before he was placed into custody, and read his Miranda warnings, which he waived. 3/18/08 Tr. at 35, 42. Officer Reeves testified that he asked Mr. Ewell what was in the car, and he allegedly replied, "it's for protection." Id. at 35, 42. Officer Reeves stated that he asked Mr. Ewell, "why are you carrying it," and he allegedly responded that "he had been beefing with people in the neighborhood . . . so he was carrying the firearm for protection." Id. at 36, 42-42. Officer Reeves also reviewed his report and testified that Mr. Ewell took his jacket from behind him and placed it on the passenger seat prior to

4

retrieving his license and registration. Tr. at 37-39.

### C. Dr. Steven Duerr's Testimony

Dr. Duerr, an expert in forensic chemistry, testified that he observed the four bags of marijuana, and opined that based on their sealed packaging, he did not believe that they would have had a noticeable odor. 5/21/08 Tr. at 21-22. Dr. Duerr also testified that he currently did not notice a smell from the drug evidence, and that the odor from "this . . . very small quantity of marijuana . . . would be small as well." Id. at 23, 28-30.

Dr. Duerr also testified that the dried powder form of marijuana present in the drug evidence was the "least volatile compound," and that any heat from Mr. Ewell's car would have had no effect on the marijuana's smell. Id. at 23-25, 30-32, 34. Dr. Duerr also testified that the heat-sealed packaging would have prevented the escape of any volatile material, "except for a very small amount that would . . . diffuse through the plastic . . . but not quickly." Id. at 25-26, 33. Dr. Duerr also explained that a zip-lock seal, when carefully closed, is "pretty close to a heat seal." Id. at 26.

### D. Special Agent Eric Miller's Testimony

Special Agent Miller, an expert in the identification and appearance of marijuana, testified that marijuana's odor lessens as it dries out, and that he could presently smell an odor from the drug evidence. Id. at 43-44. Special Agent Miller testified that the odor was "even stronger now," because "[t]he more it's handled, the stronger the odor will be." Id. at 44, 47, 52. Special Agent Miller testified that the drug evidence in the present case has been handled on several occasions. Id. at 52.

Special Agent Miller further testified that cars act as "secondary containers," and that "it will capture the marijuana smell. So as the door or window would be open, you're going to get some of

the smell emanating from that vehicle . . ." Id. at 46. Finally, Special Agent Miller testified about his experience handling marijuana in other cases, but could not recall a scenario where four bags of marijuana gave off a smell. Id. at 46-50.

### III. PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment protects "the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. Temporary detention of individuals during an automobile stop by the police, "even if only for a brief period, constitutes a 'seizure' of 'persons'" within the meaning of Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10 (1996) ("An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."); see also United States v. Delfin-Colfina, 464 F.3d 392 (3d Cir. 2006) ) (stating that a traffic stop will be deemed a reasonable seizure if the police possessed, specific, articulable facts that the individual violated a traffic law at the time of the stop).

In Delfin-Colfina, the Third Circuit stated that although "reasonable suspicion is a generally undemanding standard . . . a reviewing court must consider whether the 'rational inferences from those facts reasonably warrant [the] intrusion.' Ultimately, our mandate is to weigh 'the totality of the circumstances-the whole picture." Id. at 397 (internal citations omitted). The court further explained that a traffic stop will be deemed a reasonable "seizure when an objective review of the facts shows that an officer possessed specific, articulable facts than an individual was violating a traffic law at the time of the stop." Id. at 398.

Mr. Ewell does not challenge the basis for the traffic stop, but, rather, submits that the officers lacked reasonable suspicion or probable cause to search him and the vehicle that he was driving. The

6

automobile exception to the Fourth Amendment's warrant requirements requires that the officers must have probable cause to search the vehicle.  See e.g., Pennsylvania v. Labron, 527 U.S. 465, (1996).

Mr. Ewell submits that the officers lacked probable cause to search the vehicle because Officer Conkey's testimony is not credible regarding the smell of marijuana, his alleged basis for the subsequent search of the vehicle.  First, Officer Conkey claims that the smell of marijuana was immediately noticeable when Mr. Ewell rolled down his window, but instead of immediately arresting Mr. Ewell, Officer Conkey testified that he then asked Mr. Ewell for his license, registration and insurance.  (Tr. 8, 20).

Second, Officer Conkey testified that Mr. Ewell did not move his jacket onto the passenger seat until after he asked him to step out of the vehicle, but this testimony is contradicted by Officer Reeves' testimony and police report.  Third, Officer Conkey directly contradicted himself during the evidentiary hearings.  Officer Conkey first testified that the drug evidence was contained in heat-sealed bags, but he later changed his testimony and stated that the drug evidence was not in heat-sealed bags.

Dr. Duerr testified that Officer Conkey would not have been able to smell marijuana under the circumstances of this case based on the small amount of marijuana.  Dr. Duerr also testified that the heat in Mr. Ewell's car would have had no effect on the marijuana.  Moreover, Special Agent Miller testified that the drug evidence's odor grew stronger because of the amount of times that it had been handled, and that despite his experience, he could not recall a scenario where four bags of marijuana gave off a smell.

Thus, Officer Conkey's testimony is not credible and highly unbelievable, and Mr. Ewell notes

that Officer Conkey has previously been found not to be credible during testimony. Given the lack of marijuana smell in the vehicle, the officers lacked reasonable suspicion or probable cause to do anything beyond issuing Mr. Ewell a traffic citation.

Finally, Mr. Ewell notes that there were no additional factors present in this case to give rise to reasonable suspicion or probable cause. Mr. Ewell's perceived nervousness was because he had been pulled over for a traffic violation and did not want another ticket, and his jacket, despite having a heavy pocket, is not alone suspicious. Accordingly, the officers' search of the vehicle was illegal, and all evidence, including statements, stemming from the illegal search must be suppressed as "fruit of the poisonous tree." Wong-Sun v. United States, 371 U.S. 407, 484-485.

## IV. CONCLUSION

For the reasons set forth, Mr. Ewell submits that all evidence, including statements, obtained as a result of the illegal search, must be excluded at trial.

Respectfully submitted,

 /s/ Eleni Kousoulis
Eleni Kousoulis, Esquire
Assistant Federal Public Defender

Attorney for Defendant, Christopher Ewell

Federal Public Defender
One Customs House
704 King Street, Suite 110
Wilmington, DE 19801
(302) 573-6010
ecf_de@msn.com

Dated: June 25, 2008