IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 07-169-SLR |
| ) | |
| CHRISTOPHER EWELL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On December 13, 2007, defendant Christopher Ewell was indicted by a grand jury for possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1). (D.I. 13) Defendant moves for suppression of evidence and statements, arguing that law enforcement officers lacked probable cause or reasonable suspicion to search defendant's car and jacket. (D.I. 15) Evidentiary hearings were conducted on March 18, 2008 (D.I. 18) and May 1, 2008.[1] (D.I. 24) The matter is fully briefed. (D.I. 25, 26) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion will be denied.

---

[1] Testifying on behalf of plaintiff were Wilmington Police Department ("WPD") officers Brian Conkey ("Conkey") and Robert Reaves ("Reaves"), as well as Eric Miller ("Miller"), Special Agent for Drug Enforcement Administration ("DEA"). Dr. J. Stephen Duerr ('Duerr"), forensic chemistry expert, testified on behalf of defendant.

## II. FINDINGS OF FACTS

Pursuant to Federal Rules of Criminal Procedure 12(d), the following constitutes the court's essential findings of fact.

1. At approximately 4:00 p.m. on November 26, 2007, Conkey and Reaves were on patrol in a marked police car in Wilmington, Delaware.[2] (D.I. 18 at 5-6) As Conkey drove the patrol car into the area of 24th and Jefferson Streets, he observed a white Buick ("Buick") proceed directly, without stopping, past a stop sign at 25th and Jefferson Streets. (Id. at 6; GX1) Conkey followed the Buick eastbound approaching a stop sign at 24th and Jefferson Streets. (Id. at 6) The Buick traveled through the intersection without stopping. Conkey concluded that the Buick was exceeding the posted speed limit. (Id. at 8) Still following, Conkey observed the Buick approach at stop sign 24th and Madison Streets. Again, without stopping, the Buick traveled through the intersection. (Id. at 7) Conkey activated the parol car's overhead lights and pulled directly behind the Buick to initiate a traffic stop. After the Buick came to a complete stop, Conkey observed the driver quickly remove his jacket; Conkey testified that this was unusual behavior.[3] (Id. at 8, 19)

2. The officers exited the patrol car; Conkey approached the Buick's driver side and Reaves approached the passenger side. (Id. at 8) Defendant rolled down the car

---

[2] Conkey has been a patrol officer for over three years and Reaves for almost two years. (D.I. 18 at 3, 34)

[3] The black outerwear jacket ("the jacket") was admitted into evidence. (Id. at 26; DX2)

window.[4]  (Id. at 8)  Conkey requested defendant's license, registration and insurance and informed defendant of the reason for the stop.  (Id. at 9)  Defendant retrieved the license and vehicle documentation from the glove compartment and indicated he was late for work and could not afford to receive another traffic ticket.  (Id. at 9, 20, 24)  Conkey noticed that defendant looked straight ahead without facing Conkey, and his hands were shaking.  (Id. at 10)

    3.  Conkey testified that, as soon as defendant lowered the window, he detected a "strong smell" of "fresh marijuana."[5]  (Id. at 11)  Conkey explained that the smell of marijuana was strong due to "the winter months and the heat being on, once [defendant] let down the window, the strong odor of marijuana came because the heat was coming outside of the window, which made it noticeable . . ."  (Id. at 11-12)  Conkey asked defendant the reason for the marijuana smell.  (Id. at 12)  Defendant stated there was nothing in the Buick.  Because of the marijuana smell, defendant's nervous behavior and for officer safety, Conkey asked defendant to get out of the Buick.  (Id. at 27)  As defendant exited, Conkey watched him place the jacket on the passenger seat.[6]  (Id. at 12, 24, 32)

---

[4]Conkey identified the driver as defendant, the sole occupant of the Buick.  (Id. at 8, 9)

[5]According to Conkey, while attending the police academy, he took classes on drug investigations, which included training to recognize the smell of marijuana and other controlled substances.  (Id. at 10-11)  As a patrol officer, Conkey has had experience with the seizure and smell of marijuana.  (Id. at 11)

[6]A police report authored by Reaves states that defendant moved the jacket to the passenger seat before retrieving his license and registration.  (Id. at 21; DXI)

  4. Conkey noticed that the jacket seemed heavy on one side, "like it [had] some weight to it." (Id. at 12) He pulled the jacket out of the Buick and examined it at eye level. (Id. at 13, 28) Although he could feel the weight of something within the jacket, Conkey could not determine the contents. (Id. at 28) As he examined the outside of the jacket, Conkey testified that the jacket opened up and he saw an unidentifiable object inside a front, unsnapped pocket. (Id. at 13, 26, 28-29) Conkey opened the pocket further and saw a black and silver handgun. (Id. at 13, 14; GX2) While removing the handgun from the pocket, Conkey discovered four, small zip-lock bags containing marijuana[7]. (D.I. 24 at 5) Each bag was securely closed.[8] The four bags were contained inside a larger plastic sandwich bag. (Id. at 6; D.I. 18 at 29; DX4)

  5. While Conkey searched the jacket, Reaves detained defendant at the back of the Buick. (D.I. 18 at 13) After the handgun and marijuana were discovered, defendant was placed under arrest and read Miranda warnings. (Id. at 16-17, 35, 40-41) Reaves testified that defendant stated he understood his rights and answered a question regarding the contraband found in the jacket. (Id. at 35, 42-43) Defendant was then transported to WPD headquarters. (Id. at 16) Conkey testified that, during the drive, he asked defendant whether he understood his Miranda rights, to which defendant answered affirmatively. (Id. at 17) Conkey then asked defendant the reason he would drive around with a gun and marijuana, to which defendant provided a response.

---

  [7]Miller described the four small packets as "$5 bags". (D.I. 24 at 38-39)

  [8]Conkey testified initially that the bags were heat-sealed; however, at the second evidentiary hearing, he testified that the bags were closed, not heat sealed. (D.I. 18 at 29; D.I. 24 at 6)

6. Defense expert, Duerr, an expert witness in forensic chemistry, testified that the four small bags of marijuana contained within another plastic bag and secured within a jacket pocket would not have had a noticeable odor.[9] (Id. at 22) Duerr opined that the bags found in defendant's jacket contained "a very small quantity of marijuana, so the odor associated with it would be small as well." (Id. at 23) Additionally, the heat coming from the car heater would not have had any effect on the marijuana's odor. (Id. at 24-26) Duerr stated that heat-sealed packaging would have prevented the smell of marijuana from escaping through the bag and that a zip-lock seal, when closed properly, is "pretty close to a heat seal." (Id. at 25-26, 34)

7. During the hearing, Duerr examined the four bags and was unable to detect any odor. (Id. at 29) He testified that the length of time that the marijuana was in the Buick, the bags being opened in the car and any residue on the bags should not have affected the smell of marijuana. (Id. at 33)

8. Special Agent Miller, an expert witness in the identification of the smell and appearance of marijuana, testified that dried marijuana has a distinct smell which he has been able to detect during traffic stops.[10] Miller explained that, during a recent car

---

[9] Duerr is a certified Professional Chemist and a Professional Engineer. (Id. at 17; DX3) He has over 20 years forensics experience with analyses related to controlled substances. Currently employed by Libra Technical Center, his daily activities include the analysis for strength and purity of food, drugs and cosmetics. (Id. at 17) Additionally, at various times over the last 20 years, he has tested controlled substances for the DEA.

[10] As a DEA special agent for over 18 years, Miller has been the seizing agent of numerous controlled substances, including marijuana. (Id. at 37, 39) For about 12 years, he has served as the drug evidence custodian, responsible for all marijuana storage for the Philadelphia division of the DEA. (Id. at 37) Miller has received specific training in both the smell of freshly cut marijuana and burning marijuana. He has been

5

stop, he was able to detect the "clear distinct smell of marijuana emanating from a purse" from about four feet away. (Id. at 45) The marijuana found in the purse was inside a zip-lock bag, slightly larger than the bags found in defendant's jacket. (Id. at 46)

9. Miller testified that the heat from a car heater can intensify the odor of marijuana because the car acts as a secondary container that captures the marijuana odor. (Id. at 45-47) Miller has been able to detect the smell of marijuana coming from drug evidence contained in heat-sealed bags, especially if the bags are open or residue is on the outside of the bag. (Id. at 47) Miller testified that marijuana odor can intensify over time because "[t]he more it's handled, the stronger the odor will be." (Id. at 44, 47, 52) Miller examined the bags, which he acknowledged had been handled on several occasions, and was able to detect an odor. (Id. at 44, 49, 52)

### III. STANDARD OF REVIEW

Once a defendant challenges the legality of a warrantless search and seizure, the burden is on the government to demonstrate that the acts were constitutional. United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995); United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005). The burden of proof is a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 178 n.14 (1974). The government bears the

---

involved in over 250 seizures of marijuana evidence, including 25 vehicle stops where marijuana was discovered in quantities similar to the amounts found in defendant's jacket. (Id. at 38, 41) Miller is currently the marijuana eradication coordinator for Delaware, responsible for keeping statistics and control of eradication funds as well as training local law enforcement in eradication.

burden of showing, by a preponderance of the evidence, that any statements made to law enforcement were voluntary. Lego v. Twomey, 404 U.S. 477, 489 (1972).

The court is charged with reviewing the "credibility of witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." United States v. McKneely, 6 F.3d 1447, 1452-53 (10th Cir. 1993); Government of the Virgin Islands v. Gereau, 502 F.2d 914, 921 (3d Cir. 1974).

## IV. CONCLUSIONS OF LAW

### A. Traffic Stop

It is undisputed that a law enforcement officer may lawfully stop a vehicle after observing a violation of state traffic laws. Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977); United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004). Reasonable suspicion is required to support an investigatory traffic stop under the Fourth Amendment. United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006) (joining other circuit courts in concluding that "probable cause" not required as predicate for traffic stop). "It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006). Law enforcement officers are permitted to seize and search a vehicle without a warrant where there is probable cause to believe the vehicle contains contraband. United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002). Probable cause to support the search of the vehicle also "justifies the search of every part of the vehicle, and its contents that may conceal the

object of the search." United States v. Ross, 456 U.S. 798, 825 (1982); Wyoming v. Houghton, 526 U.S. 295, 301 (1999).

The record conclusively reflects, and defendant does not contest, that defendant drove the Buick past three stop signs without stopping and, upon this basis, Conkey initiated the traffic stop. Defendant does, however, contend that officers lacked probable cause to search the vehicle because Conkey's testimony regarding the odor of marijuana is not credible.

The evidence regarding the odor of marijuana consists of Conkey's personal observations and the opinion evidence of two experts, Dr. Duerr and Special Agent Miller. The expert opinions are of equal weight. Dr. Duerr testified, based on his experience in a laboratory setting, that he "do[es] not believe [the four bags of marijuana] would have had a noticeable odor." (D.I. 24 at 22) Agent Miller testified to the contrary, based on his experience in the field. The court, therefore, credits Conkey's testimony as to the noticeable odor of marijuana emanating from defendant's car. The marijuana odor provided probable cause for the search of the car and its contents, including the jacket.

### B. Statements

The Fifth Amendment to the United States Constitution, which applies to the States by way of the Fourteenth Amendment, provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. Const. Amend. V; U.S. Const. Amend. XIV; Malloy v. Hogan, 378 U.S. 1 (1964). The seminal case, Miranda v. Arizona, 384 U.S. 436, 444-45 (1966), provides that

the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required.  Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.  The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

The uncontradicted record establishes that defendant was advised of his Miranda rights.  Reaves testified that defendant acknowledged an understanding of the Miranda rights and voluntarily made a statement.  Considering the demeanor and manner of Reaves, the court finds his testimony credible as to the circumstances surrounding defendant's statements and, therefore, suppression is unwarranted.

## V. CONCLUSION

At Wilmington this **6th** day of August, 2008,

IT IS ORDERED that:

1. Defendant's motion to suppress is denied. (D.I. 15)

2. A telephonic status conference is scheduled for **Wednesday, August 27, 2008 at 9:30 a.m.**, with the court initiating said call.

3. The time between this order and **August 27, 2008** shall be excluded under the Speedy Trial Act in the interests of justice.  18 U.S.C. § 3161(h)(8)(A).

United States District Judge